AMERICAN ELECTRIC WORKS, INC., v. WOLF ELECTRIC WORKS, INC.

---

(Nov. 29, 1926. Opinion and Decree.)
(Jan. 3, 1927. Rehearing Refused.)

---

(*Syllabus by the Court*)

1. Louisiana Digest—Sales—Par. 45, 58.

A vendee in a contract of sale who delivers the merchandise sold before the dates mentioned in the contract, commits no breach thereby, particularly when it appears that he was urged to make earlier delivery by his vendor.

Appeal from Civil District Court, Division "F". Hon. Percy Saint, Judge.

Action by American Electric Works, Inc., against Wolf Electric Works, Inc.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

D. B. H. Chaffe, W. Catesby Jones, of New Orleans, attorneys for plaintiff, appellee.

Benj. Y. Wolf, of New Orleans, attorney for defendant, appellant.

WESTERFIELD, J. Plaintiff alleges that on May 21, 1920, it sold to defendant 5600 pounds of "double cotton covered magnet wire in 200-pound reels, numbered 9 to 18, inclusive, and one reel No. 20," deliveries to be made in installments at intervals of 6, 9 and 19 months; that at the request of plaintiff the delivery dates were changed; that on April 8, 1921, defendant refused, in writing, to accept further deliveries of wire and that, at the time, there was 2684 pounds of the original 5600 pounds on hand; that in the meantime the market had declined to the extent of $536.74, as affecting the wire on hand and unshipped. Plaintiff sues for that amount as damages for the breach of the contract by defendant.

The defense is two-fold. First, the contract is void because (a) it contains the potestative condition and (b) misrepresentation, i. e., fraud.

Second. The contract was first breached by plaintiff in that it delivered the goods before the date of delivery mentioned in the contract.

There was judgment for plaintiff as prayed for and defendant has appealed.

The alleged potestative condition is based upon the "strike clause" in the contract reading as follows:

"The seller shall not be liable for non-performance of this order in whole or in part, if such non-performance is the result of any fires, strikes, difference with employees, casualties, delays or interruptions in transportation, shortage or failure of car supply or other causes beyond the seller's reasonable control; and these exceptions shall not be limited or waived by any other terms of this order, whether printed or written."

No argument, orally or in brief, was made in support of this contention and we therefore conclude it has been abandoned, and, we might add, properly so.

The misrepresentation is alleged in the petition to consist of a statement by plaintiff's salesman "that there would be a shortage of copper and cotton and that this company would not be able to deliver except after a lengthy delay" whereas "after said order was received the company notified respondent that it would be able to deliver all the wire ordered". On the trial of the case defendant was not permitted to prove the alleged statement of plaintiff's salesman upon the ground that the contract was reduced to writing and its terms could not be varied by parol proof of a contemporaneous statement. Plaintiff complains of this ruling as prejudicial. We believe the ruling was correct. There is abundant proof in the record that plaintiff was having difficulty in making delivery of its products in keeping with its sales and that defendant was most insistent in its request for earlier deliveries. We can see nothing fraudulent in the representations alleged to have been made.

The plaintiff corporation is domiciled in Philippsdale, R. I., and defendant in New Orleans. The contract between them is in the form of letters containing an offer to buy and an acceptance. The offer of plaintiff is in the following language:

"Please enter our order for the following wire.

(A detailed description of the wire follows) and the letter continues—

"In reference to delivery, we understand same to be on 9-10-11-12 thirty-five weeks (35) on 13-14-15 twenty-five weeks (25), on 16-17-18-19-20 nineteen months (19), and we further understand that you are bettering your deliveries considerably so that we sincerely hope that you will get our wire to us much sooner than these dates.

"We urgently request that if you can only ship us a reel at a time, that you please endeavor to better your deliveries to us on sizes 9-12-13-15-16.

"If you will refer to our March order and try to let us have just a reel or so in these sizes on that order, you will help out tremendously.

"Yours very truly,
"WOLF ELECTRIC WORKS, INC.,
"(Signed) M. E. Williams,
"Secretary."

On June 21st, one month after the offer had been accepted, defendant, in reply to a letter of plaintiff, stating that the best deliveries it could make would be February 25th, February 26th, and December 31st, wrote:

"Replying to your letter of the 16th inst., we will ask that you get in touch with the factory and use your utmost endeavor to have our order of May 19th shipped, either in whole or in part, at a date in advance of those listed in your letter.

"When your Mr. Patton again calls we will give him another order as to be able to keep our stock in fairly good shape.

"A local concern is getting mighty good delivery on D.C.C. magnet wire from some manufacturer and due to the fact that you

seem to be unable to make fairly prompt delivery we were forced to place an order elsewhere, much to our regrets as the writer's dealings with your company in the past have always been so pleasant.

"You of course understand that we do not intend to be unreasonable in this matter, but, we do expect that, in view of the business you have received through the writer in the past you will manage to send us a part of our order when you are drawing out wire for other concerns of the same sizes ordered by us.

"Kindly do your utmost to keep us supplied as we cannot keep our doors open without magnet wire."

When the wire was purchased and for some time thereafter plaintiff was frantically demanding early shipment. For some reason its attitude changed and the wire is not wanted at all.

On November 19, 1920, defendant writes, asking the cancellation of the order so far as the unshipped wire is concerned, or "if this be impossible, to sell same for us at the price as billed us," because "we cannot tell just what we can do so far as remittances are concerned. In fact we are so overstocked now that we are disposing of some our wire at a loss".

On January 8, 1921, defendant wrote:

"We find at the present time that we are considerably overstocked on magnet wire. We purchased wire from you sufficient for a year or more requirements, based on the statement of your representative, relative to the condition of the work in your factory. We now find that you are in position to make very prompt delivery on wire but as stated above we are considerably overstocked.

"Due to the fact that we receive absolutely no protection on the order which we placed with you, we presume that it is necessary for us to allow you to complete same, however we will ask that instead of setting a fixed schedule for delivery on the balance of our order, you allow us to advise you as our stock decreases, what part of the order it is satisfactory to ship. We will give you our assurance that we will purchase no magnet wire, of the sizes specified on our order, from any other source, until the order is completed."

Finally on May 20, 1921, in answer to a letter of plaintiff refusing to cancel the remainder of the order defendant wrote:

"We have your letter of April 11th with reference to cancellation of the balance of our order of May, 1920.

"We feel that we are within our rights in demanding cancellation and have consulted our legal adviser, and upon his advice we will accept no further shipments to apply on this order. We find that certain sizes of this wire, scheduled for nineteen months' delivery, in accordance with the acknowledgment of our order, have been shipped to us already. We feel that you have not lived up to your agreement as stated in your acknowledgment and we are, therefore, not obliged to take the wire."

We are forced to conclude that defendant's difficulties are entirely due to its own fault. It is apparent that it overreached itself by buying beyond its requirements.

As to the measure of damages, the difference between the selling price and the market price is the rule to be followed. Woodstock Iron Works vs. Standard Pulley Mfg. Co., 115 La. 829, 40 South. 236; Hafner Mfg. Co. vs. Lieber Lbr. & Shingle Co., 127 La. 348, 56 South. 346; American Trading Co. vs. N. O. & N. E. Ry. Co., 159 La. 9, 105 South. 82.

The proof in this regard seems to us sufficient to support the award of the district court.

The judgment appealed from is therefore affirmed.